I'm proud. First up to the wall. Yes. Yep. Dale. Thank you, Miss. All right. May it please the court? Good morning, Your Honor. My name is Cora Moy on behalf of the people. The issue before the court today is whether the trial court erred in granting the defendant's motion to suppress items. In support of why this court should reverse the trial court's order and remand the cause for the trial proceedings, I would first like to address why the officer had reasonable suspicion to make an probable cause to arrest the defendant. On December 10th, 2016, a clerk at Casey's made an emergency call to the police regarding a possible drunk driver. The description of the driver was a white male in a white scion, and the clerk described how the driver hit the curb, went over the curb and almost hit the building. And in response, an officer was dispatched to Casey's. It was snowing outside, correct? Correct. So that could explain why he hit the curb. It may have explained why the defendant hit the curb. However, it went over the curb and almost hit the building. Do we know how close the curb was to the building? That fact is not in the record, but I believe in our everyday usage of going to the gas station, there's about maybe a four feet gap in between the curb. Do we know if it was a curb or a parking section of concrete? Typical stops that where you roll in and pull your car up? That is also not in the record either. However, after this call was made, the officer responded quickly based on the timeline of the testimony, because the officer was able to see the male driver getting into a white scion. And after observing this vehicle drive out of the Casey's parking lot and onto the highway, that's when the stop occurs. You mentioned that the call came out of a white male driving the scion? Yes, that's correct. I believe that is on page our 40. I believe so. Well, our 40. What I saw was that there was a male driver. That's what the officer testified to. It didn't say a white it. They separated in the record. There's separate places, I believe. And the first section, it just says male driver. And then further down, it does say that it is a white male. There was a clarification of the question. If you will give me a moment, I can... Well, either way, the trial court made rulings in R74 that the call didn't give a description of the person who drove the car, male, female, white, black, or anything like that. So that's against the manifest way to the evidence, is it not? That's correct. And that's the citation for the white male and a white scion is on record 41 to 42. I believe the question is at the bottom of 41, and then the white male, white scion comes out on 42. So because an officer may initiate a terror stop based on the information provided by a third party, and because incidents regarding drunk driving require less rigorous cooperation than tips concerning matters presenting less imminent danger to the public, because the non anonymous tipster is alleging a possible drunk driver, it has public safety ramifications. The officer's cooperation that there is a white male driving a white scion is sufficient to justify... The officer allegedly saw or observed a violation, is that correct? That's correct. And the violation related to having the lights off from two to four seconds? That's correct. The officer also stated in... That occurred on private property though? Yes. So that's not a violation? Whether or not it was a violation of the statute, more importantly, the anonymous tip that was... I'm sorry, it was a non anonymous tip that was given that would justify a reasonable... That would justify the officer's reasonable suspicion for the stop. The officer did testify that he did continue to follow the defendant from the Casey's ramp because of this call. I believe that is on page 31 of the record that says that the officer continued to follow the vehicle because of the original... Because of the dispatch from the clerk's allegation that the defendant hit the curb, went over the curb, almost hit the building, and that he was possibly drunk. So for those reasons that the officer had reasonable suspicion for the stop. Didn't the defendant say something like when he was asked to give a breathalyzer in stroke mode or something? I believe he said... I heard in stroke mode, however, I believe there were brief states that in stroke, but yes, that would go towards the probable cause for the arrest. Well, what did he mean? Did anybody argue what that was supposed to have meant? Did the trial court make a finding as to what that phrase was supposed to convey? I believe there was no finding by the trial court as to what the defendant meant by in stroke mode. But in terms of the facts related to how the officer had reasonable... Or I'm sorry, had probable cause for the defendant's arrest. When the officer initially pulled over, the defendant had his windows down when the officer approached. The officer smelled alcohol in his breath. The defendant had glassy bloodshot eyes. The officer said that the defendant's speech was thick tongued, although the trial court said that... What if he'd had a glass eye and it looked normal? Would that indicate anything? I'm sorry, can you repeat your question? Well, you said his eyes were glassy, so I was wondering, if he had a glass eye, would it look normal? I suppose it would look normal if he had a glass eye. But these... In addition to those, the defendant also admitted to having three beers six to seven hours ago. And these factors aren't, I suppose, manifestations of having a stroke. These are not symptoms that are stroke related. And then when the officer asked the defendant about his driver's license and registration, the defendant handed over... Don't you think that some, at least in some instances, depending on which hemisphere of the brain is affected, it could affect your speech and you could easily be slurred? I have met many people who have had strokes who slur their speech and it takes them years to get over it. Sure, but... If they get over it at all. Sure, but taking the slurred speech out, there's still sufficient facts here to support that there is a problem caused. Again, the defendant hands over a credit card along with his driver's license. That's not a manifestation of a stroke. The defendant smelled like alcohol. The officer mentions this fact to him twice, and that's in the video at 336, I believe. No, I'm sorry, at 455 and 547. The defendant fumbles his wallet, and maybe that is a manifestation of a stroke. However, arguably, he's having difficulty handing over items to the officer, such as giving the credit card. Then when the officer moves the defendant to Jewel to perform field sobriety test, the first thing that the defendant says upon exiting the car is, I have a stroke. This is an unprompted statement, and arguably, this is to inoculate himself of any poor performance based on the field sobriety test. The defendant was instructed four times by the officer on how to perform the HGM test. The video exhibits that the defendant had issues complying and answering the officer's questions. For example, when the officer asked the defendant, do you want to take the test? Yes or no? The defendant hesitates. He says he lives nearby. It's cold. He doesn't like to be in this position, and that occurs in the video at 1510. The defendant says he can't count anymore. The defendant says he had a stroke, a freaking stroke. My wife left me. He wants to walk home. This happens at 1613 in the video. And when the defendant... When the officer asks about the breathalyzer test, he says he's in stroke mode. And in response to all of these questions, the officer asks, do you want an ambulance? Do you need medical attention? And he says, no, I don't know. His answers to these questions are unresponsive. And the totality of all of these factors give the officer a probable cause to arrest the defendant for DUI. Can we go back to the stop for a moment? Can you address the defendant's argument that this case should be controlled by Minks? Which is a case that Justice McClaren authored. And Minks... I'm sorry. Regarding the content of the 911 call, is there enough in that to determine or to create a reasonable suspicion that the person is intoxicated? From the 911 call? Right. Yes, there is. Other than the hitting the curb, what else is there? About the possible drunk driver? Yes. The caller... The clerk from Casey's indicated that there was a possible drunk driver in the building. And so that can... In addition to describing the driver, as well as what the driver was driving... What you just related was a conclusion. It wasn't an observation, necessarily. So was it a reiteration based upon the observation that occurred outside? Or was it an iteration that was based upon something that was witnessed while the defendant was inside the building? The record doesn't reflect what it is related to, does it? No, it does not. However, we do have that... Regardless, the caller was a clerk of Casey's, and based on her observations, it prompted her to call an emergency line about a drunk driver because, as she relates, the driver drove up to the building, went over the curb, and almost hit the building. Do you know what a cyan looks like? Yes. Kind of a boxy car. Yes. Do you know how high the bumpers are off of the ground? Not off the top of my head. Okay. In Schaefer, the case that you cited, from the content of the 911 call, the court determined that there was a close encounter, that there was a disturbance that the... From the window. The employee saw a disturbance be created by the driver, which is different than this case, correct? Correct. However, that caller also indicated that the driver was intoxicated while ordering food at the drive thru. And similarly, the officer responded very quickly, and here in this case, the officer also responded very quickly. He saw the driver get into the white Cyan and drove off. So, based on people in Schaefer, our case is very similar. So, if there are no further questions... Thank you. You'll have an opportunity to make rebuttal. Thank you. Mr. Clark. Thank you, Chief. May it please the Court? Yes, the moment of your counsel. Your Honor, first I'd like to clarify that there was no evidence in the record or testimony in the record that the officer observed anyone enter into a white Cyan. The officer's testimony in the record was that he observed a white Cyan as it passed. Also, there's no evidence or testimony in the record as to the contemporaneous or lack of contemporaneousness between the purported tipster's call and any reaction by the officer. That time frame was not established in the record by the officer. I mean, the reasonable inference is that the officer is there at some point in time after the call, and there is a white Cyan with a male wife. There is a white Cyan, yes. He did not observe, at least there's no evidence in the record, that he observed anyone exiting the Casey store, entering into with a white Cyan that he observed passed in front of him. The record is only, the only thing the record is clear about from the officer's testimony is that a white Cyan did, in fact, pass in front of him. The tipster did not provide a license number. The tipster did not provide any further description. As your Honors have already indicated, the tipster did not provide any physical observations of the person. Are you suggesting that there were two Cyans in the parking lot? Judge, I'm suggesting that there's certainly a real possibility that there were two. I'm suggesting that there's a realistic possibility that the person that the tipster observed was not the same person that the officer observed and ultimately stopped. Again, the officer did not physically observe the ultimately arrested defendant do anything. Your point is that there was nothing that he saw that would confirm that this must be the drunk Cyan? That is correct. That's absolutely correct. There's no physical observation of the defendant's demeanor or behavior by the officer to corroborate or not any purported tipster. There's actually no physical information that was described by the tipster or physical mannerisms described by the tipster. For example, how the individual who purportedly drove over the curb entered the store, how close the purported tipster was to the person as they entered the store. Was it right at the front counter? Was it off to the side? Any behavior related by the tipster after the person entered the store that was related in any information that the officer testified to on the stand that we give the officer, any physical indication of what to look for or what he should be looking for. So really a clerk at Casey's who sees somebody stumbling around the store can't just call the police and say, I see a drunk guy in the store. The person has to say, I see a drunk person walking down aisle six who is stumbling in his thick tongue and slurred speech and has to give more information than just, I see a drunk, which I think a person can give an opinion as to whether someone's intoxicated. They can, but I think under the Main Street case, it's pretty clear that there has to be some physical corroboration or some physical description of mannerisms Well, here, I mean, Minx was a case where the person's driving down the road behind someone says, the person's driving recklessly. And that's all we have. Here we have a person who's driving. There's testimony about, or the tip about the person driving erratically, which is over the curb, almost hitting the store. And then the person's in the store and described as possibly drunk. I would say, sir, that we don't know what formed the basis of saying possibly drunk, whether it was simply the driving over the curb or whether it was some other mannerism of the observed by the tipster, because there is no evidence in the record from the tipster saying the person is even at that point in time, doing anything in the store or any other physical observation. So the only observation is the curb. So with the information that the officer has from the dispatch, putting yourself in the officer's shoes, you don't stop that car because you, you gotta, you gotta find out more about this than, than what you just heard that a drunk person ran over a curb and was possibly drunk inside the car, inside the store and getting in this car and theoretically driving. As we argue in our brief, your honor, I absolutely suggest that. I absolutely believe the officer needed more information. The officer was, if your honor's timeline is correct in terms of that, perhaps it was contemporaneous and there wasn't a lot of time lag and the officer wasn't back responding to what potentially could be a dangerous situation, why didn't the officer park at the Casey's instead of parking 400 feet away on a private roadway? Why didn't the officer get out of his car, walk in, talk to the clerk and says, the guy's still here. Why did the officer even, again, take any affirmative effort besides sitting in his car, 400 feet away, waiting for some white sign on the pass in front of him, whether or not it's the same one or not, in order to corroborate this purported tip? He didn't know those things, your honor. The second basis that the, the, the officer gave her, you've already addressed this, the purported violation of the headlight. It's not a violation. It's not a violation on a private roadway. There's simply no basis for the officer to believe that that was the case. Was there any explanation how the lights could be off from two to four seconds? Actually, the trial court found that the lights were not off for two to four seconds and specifically found that the officer's testimony to that effect was not corroborated by the transferring or, or the lights being on, off, and then being on again. It's very consistent. You mentioned if you have a, if you're familiar with the cyanide, if you're familiar with the new vehicle, your, the new vehicles have an automatic and then have it always on. The automatic turns on when it's dark, but some people prefer to have it all the way on. When you flip and you go through that three button cycle, the lights turn off in the interim cycle when you go until you get to the permanent. The court didn't make a finding to that effect, but you asked a state's counsel with respect to their familiarity with the cyanide and familiarity with headlights and modern vehicles. And I would suggest to your honors that that is what the court was viewing when they saw the DVD. The court, the court said, by my count, two seconds it was off. At most, I think. Well, the trial court said that at best the headlights were off by my count, two seconds, and then they came back on. And it was different than what the officer said, which was one to four seconds. Correct. And the officer. How is that different? I think it's different because there's no possible way it could have been four seconds. And the officer didn't change his testimony, despite viewing the DVD. He said one to four seconds. Correct. So somewhere between one and four seconds would be two. Two would be in there. That is correct. I'm not gonna, I'm not gonna, I don't normally, I don't normally do math this early, but I would say that that's better. That would be correct. That would be correct. Do you think that the trial court viewed this person as a citizen informant? The court did not make a specific finding to that effect. I think the language of the court indicates that it, it treated him not as something other than an anonymous informant, but I'm not sure at what level. The court never made that specific finding. Well, the court was looking for corroboration to the extent of, we don't know whether this clerk at Casey's had called the police before and whether that information was reliable. That, that sounds like a, almost an Aguilar back in the day, you know, situation. It does. But the court was troubled, though, in this particular situation by no corroboration by the officer observing any behavior, not making any affirmative steps to confirm the information received such as it was, and then thereafter not observing any actual driving violations by the psion that the officer ultimately stopped that would corroborate that the individual that passed in front of him was the same person who was reported as being intoxicated. There was simply no bad driving. What if the clerk had said, and the call had said, as opposed to, there's an intoxicated driver inside, which is what the tip was, correct? It was inside the store. I think, I think we have, I think the person's intoxicated, I think. Inside the store. If they had said, there's a stumbling drunk inside case, inside the store. That would be, that'd be enough for the stop. In my opinion, there would, that would not be enough. Under Schaefer, it would, wouldn't it? I think you still have to have the officer, if he's on scene, take some affirmative step to confirm that the psion up front, if it is contemporaneous, is in fact the same psion that Tipster's referring to. If the person inside is in fact, who's unidentified in terms of any other characteristics other than perhaps is race and perhaps is gender, is the same person that Tipster's referring to. Could you respond to the State's argument that we should follow Schaefer, that in Schaefer, there was enough, because the, the person at the drive-off was the caller and said, this person created a disturbance. So, gave the, gave the drunk some assurance that that, that is, there was enough of a close observation to determine whether or not someone's intoxicated. Certainly, Your Honor. In this particular case, none of those things were present, or at least not present from the information received in, in the open record. Again, there was no indication from the clerk that he just, he paid with a $50 bill for a, for a 50-cent, you know, Mars bar. He didn't do anything unusual. There's no indication that there were any transactions between the clerk and the individual observed by the, the Tipster to indicate that proximity that you find in Schaefer, to indicate any other kind of disturbance physically by the person observed by the Tipster, there was no proximity to smell alcohol, for example, as in Schaefer, or being in a position to at least smell alcohol. Did the record reflect how many employees were working that night at Casey's? The record was absolutely silent with respect to that in the office. Again, the officer didn't go inside the store. And it would have been very simple for the officer to go in and sees one clerk, knows that's the Tipster, if in fact it's contemporary in his time, simply says, are you the person that called? Didn't do it. We don't know if the shift changed. We don't know if the same person's there. There's a lot of things we don't know. An additional requirement that's not required by the Fourth Amendment, reasonableness is the touchstone. You don't have to ascertain the, you know, or verify every aspect of a tip, do you? I don't think you have to verify every aspect, but I think that the, the corroboration in this particular case was non-existent. I'm not saying that you have to essentially prove your case with the, from a state standpoint for reasonable suspicion or for an ultimate conclusion of criminal charge simply from the officer at that point in time. But reasonableness means reasonableness. Was it reasonable for the officer to stay 400 feet away and not walk inside and say, who's the Tipster? Who's the person? What did you observe? Is that reasonable? I think that's unreasonable in this situation, given the lacking, given the complete and utter lack of any other indicia from the purported Tipster, in my opinion. Well, what about, I mean, we have the tip that it is a male white driver driving a white Scion. Yes. Sitting outside and you see the white Scion and then seeing a male white get into the car, wouldn't that be reasonable to at least corroborate then? Your Honor, I, with all respect, I think the fundamental premise of your question is now established in the record. In what way? It's nighttime, it's snowing heavily, this officer is some 400 feet away in the Elgin Mental Health Center parking lot. There is nothing in the record, and nothing in the record that would suggest that this officer saw a white male get into that Scion. Actually, it says, and you observed a male white get into the Scion, correct? Answer, yes. And, Your Honor, I would suggest to you, given the location and the description of where the officer was located, and you can see from the DVD that the night call, and if the court had some issues with respect to the credibility of the testimony, that would be very, very near impossible. When you look at the DVD and you look where the officer was stated, and where the DVD and the dash cam gets activated, and you have to look, you can't even see the cases in any of the screenshots, Your Honor. The trial could make a finding of credibility on that issue? Not on that issue, Judge. It did make a finding of credibility on other aspects of the officer's testimony on record page 73, and then his final conclusions on record page 78. Some of the observations that the officer testified to were not corroborated by the DVD. One of the things with corroboration was that we don't have a description of the person who drove the car, male, female, white, black, or anything. Those are the trial court's findings, which are clearly against the manifesto of the evidence, because we know it's a male white. At least that's what the call was. That's what the call was. We don't know if it was this male white, that male white, and we don't know if it was this cyan, that cyan. Again, there was no additional corroboration by the officer on the scene to actually make any further determination of whether this was the same cyan, a different cyan, whether it was the same clerk that made the tip, if at all, was still the one working in the store and had any interactions with anybody still in the store. Those are all things that are lacking on this particular tip. Also, with respect to the issues of probable cause, I think the trial court's finding was, again, correct, and I don't think the trial court's factual findings should be overturned. I do not believe the false factual findings on probable cause were against the manifest way of the evidence. The indications from the defendant ultimately arrested was that he was having some type of medical emergency. The true and only medical professional on the scene was the officer, and the officer could have and should have perhaps made the call if something may have been required. But nevertheless, the defendant was able to operate again that vehicle. There's no evidence of impaired driving. There was no violation of a moving violation. He enters the public roadway correctly with his headlights fully on. He makes and signals the correct right-hand turn. He makes and signals the correct left-hand turn in the snow to enter onto the north-south road, Main Street 23. When the officer's lights are activated, he makes the re-appropriate, comes to a complete and appropriate stop. He does all of those things, despite the snowy weather, for quite some time on the DVD. There's simply no evidence of impaired driving. Your Honors, I would ask that you would affirm the trial court's decision to quash the evidence and quash the arrest since you pressed the evidence. Thank you. Thank you very much, Your Honors. Ms. Moy, you may proceed. The defendant indicates on the reasonable suspicion from why the defendant, or I'm sorry, why the officer didn't do this and do that. However, under People v. Schaefer, inciting the factors for an anonymous tip, ignoring the fact that this is a non-anonymous tip and that we do know it's a clerk who is calling the emergency line. The first factor in evaluating an anonymous tip is a sufficient quantity of information, including the make, model, plate, and the location and bearing of the cars. These are some of the examples of what would be a sufficient quantity of information. And so here, we do have the make and model of the car. While we don't have the plate number, we do have the location of where the car is. And because of the officer's contemporaneous response to the call, the officer is able to see the driver getting into this car. Moreover, the officer testifies that he parked at the Elgin Family Center because it was in the best position to see if the vehicle was still there, and that's on record, page 41. And therefore— I'm sorry, I don't quite understand. Being 400 feet away is more advantageous than actually driving through the parking lot of Casey's to see if the car was there? From the testimony, that's the officer's testimony, that location was in the best position for him to view whether there was a car there. And because this is a non-anonymous tip regarding a possible drunk driver, there wasn't sufficient time for the officer to go in to ask the clerk to verify the source of this information. This driver, shortly after the officer arrived, gets into his car and is about to drive off. If the driver continues driving, the officer would not be able to know where this car is going and if anyone would be harmed if the driver was drunk. The trial court's findings on impairment for probable cause to arrest, I mean, they were not against the manifest way of the evidence, were they? I mean, the trial court made a finding that the driving was okay, the defendant's balance was okay, his speech was okay. Those weren't against the manifest way, were they? They were against the manifest way. They were? His driving was impaired? Well, not the driving. The other factors the state would argue were against the manifest way of the evidence. While the defendant is understandable in the video, that does not mean that his words were slurred. Arguably, there is a difference between understandably. You can slur while being understandable, like what I'm doing now. What about the balance? I mean, the trial court made a specific indication about the balance, dropping the keys and then picking the keys up and not really having any trouble getting out of the car and all those things. Those weren't against the manifest way, were they? Even if we were to give the trial court, I would argue that those are against the manifest way of the evidence. Even if you take those factors out, there's more than enough factors here for probable cause. Again, the defendant had the windows down when the officer approached. The officer smelled alcohol in his breath. The officer saw the defendant's eyes. They were bloodshot and glassy. The defendant admitted that he had several, three beers 67 hours ago. The defendant, when asked to hand over his driver's license and insurance, he gave the officer a credit card. The video indicates that he had trouble responding to some of the officer's questions, and the totality of the circumstances would objectively lead an officer to believe that the defendant was under the influence of alcohol. My own experiences suggest that if I've had three beers seven hours prior, that I'm no longer under the effects of the alcohol seven hours after I've had three beers. Now, maybe I'm a little bit bigger than this man. Maybe my metabolism is a little bit faster than this defendant's. But what is the scientific basis for your statement that having three beers seven hours prior, based upon the... It's a good thing it's not the siren, which I think could... No, that was last week. There's an air raid siren, which you may or may not know about. It goes off about this time. We can't talk for 30 or 40 seconds. So anyway... It's on Tuesday. It's coming. Yes. It's coming? Yeah. Oh, it's every Tuesday? Yeah. Oh, okay. Versus Tuesday. Yeah. I've been around here a long time. But anyway, what's the basis for your statement that somebody having three beers within or outside of seven hours is under the influence of alcohol? I'm not saying there's... I'm sorry if that was my argument. That was not my argument, that in and of itself is a sufficient basis. My argument is that under the totality of the circumstances, when the officer smells alcohol on the defendant's breath, it is a factor that goes into the totality of the circumstances. And I understand that I'm out of time. So for those reasons, we would ask that you reverse the child court's order and remand this cause for further proceeding. Thank you. Thank you. We'll take the case under advisement. There will be a short recess. There are other cases on the call.